(96 South. 281)

No. 24199.

BLODGETT CONST. CO. v. BOARD OF COM'RS CADDO LEVEE DIST. (DUTTEN & NATTIN, Interveners).

(Dec. 29, 1922. Rehearing Denied April 2, 1923.)

*(Syllabus by Editorial Staff.)*

1. Parties ⬅44—Petition in intervention not subject to exception, when facts pleaded, if true, established right to recover.

In subcontractor's action against levee board, in which contractor intervened, where the facts well pleaded in the intervention petition, if true, entitled interveners to recover, it was not subject to exception of no cause of action.

2. Parties ⬅44—Intervention by contractor in subcontractor's suit held not foreign to the issues in the main suit.

In subcontractor's suit against levee board, to recover fund alleged to be due to it, intervening petition of original contractor, claiming the same fund, *held* not foreign to issues involved in the main action, and the contractor is entitled to intervene under Code Prac. arts. 389, 390.

3. Parties ⬅47—Intervener can institute demand for damages incidental to main action.

Under Code Prac. art. 364, contractor intervening in subcontractor's suit against levee board and claiming fund due from the board might institute demands incidental to the main action, such as for damages, instead of bringing independent suit.

4. Pleading ⬅403(3)—Plaintiff held to have enlarged pleadings to cover certain items, by attaching contracts to petition and offering them in evidence.

In subcontractor's suit against levee board, in which principal contractor intervened and set up claims, plaintiff, by annexing contracts to petition and filing them in evidence, *held* to have enlarged the pleadings to cover certain claims of the contractor not set up in the intervening petition.

5. Contracts ⬅233—When contract provided for payment for cashing certificates, party could not recover additional discount.

Where subcontract provided that contractor was to have certificates received from employer cashed and was to be paid $150 in consideration thereof, regardless of the actual discount, the contractor was not entitled to recover additional items of discount which it had been required to pay.

6. Contracts ⬅233—When subcontract described repairs to be paid for by contractor as those then being made, it could not be charged with subsequent unauthorized repairs.

Where subcontract provided that contractor should pay for repairs on dredge boat, "all of which are now being made and supplied," and that subcontractor would pay $250 as reimbursement, unauthorized repairs made subsequently and charged to contractor were not covered by the $250 and should be accounted for.

7. Contracts ⬅346(8)—Evidence of item claimed by intervener admissible when contract covering it was annexed to petition.

In subcontractor's suit against levee board, in which contractor intervened, claim for repairs charged to the contractor *held* provable, where subcontractor annexed to its petition the subcontract stating the repairs chargeable to the contractor.

8. Contracts ⬅303(2)—When contract canceled under statute relieving contractors because of war, contractor could not recover for subcontractor's breach.

Where dredging contractor, which sublet part of work, did not complete its own part, and by mutual consent the work done was declared full compliance under Act No. 208, of 1918, providing for cancellation of contracts rendered burdensome by the war, the contractor could not recover for the subcontractor's failure to perform.

9. Contracts ⬅278(1)—Plaintiff must show performance by him.

One seeking damages for violation of contract must allege and prove that he carried out all obligations resting on him before he can recover.

10. Interest ⬅37(1)—Not recoverable on contract without written agreement to pay.

Interest at 6 per cent., on amount claimed by dredging contractor, was not recoverable, where there was no proof of any written agreement to pay such rate of interest.

11. Pleading ⬅427—Admission of evidence of items without objection enlarged pleadings to cover them.

In subcontractor's action against levee board, in which original contractor intervened and set up claims against plaintiff and the fund, admission, without objection, of evidence of

claims not pleaded had the effect of enlarging the pleadings.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Action by the Blodgett Construction Company against the Board of Commissioners of the Caddo Levee District, in which Dutten & Nattin intervened. From a judgment for the interveners for an insufficient amount, they appeal. Amended and affirmed on rehearing.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellants.

Stubbs, Theus, Grisham & Thompson, of Monroe, and T. M. Milling, of Shreveport, for appellees.

LAND, J. Plaintiff has instituted this suit against defendant levee board to recover the sum of $3,024.22, the balance due on work done in the dredging of Kelly bayou in the parish of Caddo.

Dutton and Nattin intervened, claiming the funds sued for. To this petition of intervention plaintiff tendered an exception of no cause of action and a motion to strike out. This exception and motion were overruled, and plaintiff answered the intervention, with reservation of all rights under said exception and motion.

The defendant levee board answered, admitting that the indebtedness claimed was due either plaintiff, or intervener, or both, and deposited the full amount in the registry of court, and disclaimed further interest in the controversy. The case went to trial on these issues, resulting in a judgment in favor of plaintiff for $2,102.72, and in favor of interveners for $922.50, and taxing the costs equally between plaintiff and interveners.

Interveners have appealed from this judgment, and plaintiff has answered the appeal, praying that the judgment of the district court be so amended as to dismiss the demands of the interveners and order the entire fund paid over to plaintiff.

[1] The exception of no cause of action is not well founded, as the facts well pleaded in the petition of intervention, if taken as true for the purpose of trying said exception, would clearly entitle interveners to recover.

The motion to strike out is based on the ground that the issues raised by intervener are entirely foreign to the main issue, and foreign to all issues to be determined between plaintiff and defendant, that interveners' demand for future profits as damages for the violation of the contract by plaintiff must be raised by independent suit, and that no intervention can be allowed in plaintiff's suit, which is in the nature of a mandamus proceeding.

[2] This suit is analogous to a concensus proceeding, in which plaintiff and interveners each claim a fund of $3,024.22, admitted to be due to either or both by defendant levee board, under a contract entered into originally with interveners by said board, and sublet and assigned in part by interveners to plaintiff. Interveners also claim, in addition to the main demand, damages for prospective profits because of the failure of the plaintiff to complete its part of the contract under the assignment.

As plaintiff and interveners are each claiming the amount admitted to be due by defendant levee board under a contract to which each of them is a party, and under which their conflicting claims have arisen, evidently interveners' petition is not foreign to the issues involved in the main action. Interveners having an interest in opposing plaintiff's claim, have a right to intervene or interplead in the present suit. C. P. articles 389, 390.

[3] An intervener, like a defendant, may also institute demands incidental to the main action, such as for damages, without the necessity of bringing an independent suit. C. P. art. 364; Howell v. Mundy, 145 La. 297, 298, 82 South. 274.

As the suit brought by plaintiff is not a mandamus proceeding, the right to intervene in such a proceeding is not an issue before the court for decision, although such right has been recognized by this court in the case of State v. Pilsbury, 31 La. Ann. 8, and in a quite recent decision of this court in the case of Continental Supply Co. v. Fontenot, Sheriff, Dalbey, Intervener, 152 La. 912, 94 South. 441.

Plaintiff has assigned in this court as error:

(1) "The district court erred in overruling plaintiff's exception of no cause of action and motion to strike out."

The ruling of the trial judge is, in our opinion, correct for the reasons already assigned.

(2) "The district court erred in not sustaining the objection of plaintiff to the testimony of interveners for the reasons stated in the objection which was made general."

A detailed list of items claimed as due interveners was presented by counsel to the witness Dutton, a member of the partnership of Dutton and Nattin, and the question was asked whether said list was correct or not. Counsel for plaintiff then objected to the answer of the witness on the sole ground "that interveners cannot institute an intervention for an action in damages for violation of a contract." Transcript, p. 74. This issue has been disposed of already in this opinion adversely to the contention of able counsel for plaintiff.

(3) "The lower court erred in holding that that testimony enlarged the pleadings so as to entitle the intervener to recover for items not sued on."

We have carefully read the examination of the witnesses as disclosed by the record, and fail to find any such objection urged in the lower court to the testimony of any witness.

The district judge, in his written opinion on the merits, states that the account offered "was not objected to on the ground that it sought to prove an indebtedness not alleged in the intervention," but was objected to "for the reason that interveners cannot substitute an intervention for an action in damages for violation of a contract."

The objection urged to the admissibility of this testimony at the time of its introduction was properly overruled. The opinion, however, states that:

"Intervener contends that the items not being objected to on the latter ground (enlargement of pleadings) they enlarge the pleading, and, if proof is found sufficient, should be allowed. We think the authorities support this contention and will allow such items as are proved."

The list referred to and offered in evidence by interveners reads as follows:

Statement.

| | | |
|---|---|---|
| (1) By contract October 6, 1916 | $ | 250 00 |
| (2) By contract October 6, 1916 | | 150 00 |
| (3) Feb. 10, 1917, due on estimate 11 | | 10 00 |
| (4) March 10, 1917, due on estimate 12 | | 11 62 |
| (5) April 2, due on estimate 13 | | 10 50 |
| (6) May 10, due on estimate 14 | | 12 00 |
| (7) 1/12/16. Team rental and drill press | | 75 00 |
| (8) 1/30/16. Deducted in error from Dutton and Nattin's portion of estimate No. 10 (Henderson's charge) | | 39 28 |
| (9) Dutton and Nattin's 20 per cent. holdback on actual yardage dug | | 684 80 |
| (10) $1.69 on 122,496 yards being deficient yardage | | 2,070 18 |
| | | $3,315 38 |
| (11) Feb. 17. Clearing by Blodgett (credit) | | 37 50 |
| | | $3,275 88 |
| (12) Interest at 6 per cent. on same from October 1, 1916 | | 98 00 |
| | | $3,373 88 |

[4] Plaintiff itself, by annexing to and making a part of its petition, and by filing in evidence the original contract between interveners and the levee board, the subcontract between interveners and plaintiff, and the supplemental contract between the same parties, has enlarged the pleadings as to item (1) $250 and item (2) $150. It is stipulated in said subcontract of date October 6, 1916, that interveners (Dutton and Nattin) "agree to furnish and pay for all flues, shafts, and gears and for certain plates for boom repairs,

all of which are now being made and supplied by the W. K. Henderson Iron Works & Supply Company. It is agreed that the parts above referred, to are to be installed at the expense of the Blodgett Construction Company (plaintiff), and, when final settlement is made between the parties hereto, the Blodgett Construction Company agrees to pay the said Dutton and Nattin the sum of ·$250, which is to be in full payment and settlement for said supplies and repairs above referred to."

[5] In the subcontract of October 6, 1916, it is also stipulated that interveners are to receive $150 in consideration of having the certificates issued by defendant levee board reduced to cash and paying to plaintiff the amount due in cash, and that said amount only is to be paid, regardless of the amount of discount borne by the interveners in cashing these certificates, and is to be paid only after the plaintiff has received all moneys due it under the contract for services, expenses, and damages, as set forth in the agreement.

A letter of date October 20, 1916, signed by interveners, Dutton and Nattin, and addressed to the City National Bank, Shreveport, La., shows that interveners made arrangements with this bank to cash these certificates for plaintiff. This letter was offered in evidence by plaintiff.

Items (3), due on estimate 11, $10; (4) due on estimate 12, $11.62; (5) due on estimate 13, $10.50; (6) due on estimate 14, $12—constitute claims for discount in addition to the $150 stipulated in the subcontract. As the subcontract stipulates that plaintiff is not to pay more than $150 for discounts of certificates, regardless of the amount of discount borne by the interveners in cashing these certificates, these claims are neither due under the contract or otherwise, as far as plaintiff is concerned. They were properly rejected by the lower court.

As to item (7) the interveners state in their brief:

"The seventh item, covering team rentals, for the sum of $75, was paid by plaintiff to the team owners and no recovery on this item can be urged."

[6, 7] Item (8) "deducting in error from Dutton and Nattin's portion of estimate (10) Henderson Garage, $39.28."

In reference to this item, Dutton testifies:

"We were having some repair work done at Henderson's shop, and we were to pay Henderson for those repairs that we had in there. For some unknown reason there were other repairs taken in there after we took the (dredge) boat over and charges were made in the order given, and the whole thing we deducted from the estimate from what we actually agreed to pay."

Interveners had leased this dredge boat from the Gore Construction Company, and subleased it to plaintiff company in the subcontract, and those repairs relate to this boat.

The trial judge was of the opinion that this item was included in the $250 that the Blodgett Construction Company was to pay Dutton and Nattin for repairs. However, the subcontract between plaintiff and interveners shows that these repairs were being made at the time the contract was signed; "all of which are now being made and supplied by the W. K. Henderson Iron Works & Supply Company" is the language of the subcontract referring to the repairs included therein.

Any deduction from the amount due interveners for unauthorized repairs, made subsequent to the subcontract, should be accounted for, and the evidence was admissible to prove this item, as plaintiff had annexed to and made part of its petition the subcontract limiting the amount due for the repairs therein mentioned to the sum of $250. Interveners, in rebuttal of this amount, were therefore at liberty to show that a larger sum was due for unauthorized repairs made since the date of the subcontract in question. This item should have been allowed.

Item (9), "Dutton and Nattin's 20 per cent. holdback on actual yardage dug, $684.80," is expressly claimed in the intervention paragraph 9, "for yardage actually removed by them of $609.50." In reference to this item, Dutton testifies: "We dug about four miles of that, and they held 20 per cent. back from it, and that is what was due us for our actual work." The correctness of the account is sworn to also by Nattin. This item was properly allowed.

[8] Item (10)—"$1.68 on 122,496 yards being deficient yardage $2,070.18." This item is for damages for future profits, because of the violation of the contract by plaintiff. The record shows that neither plaintiff nor interveners complied with the contract.

Under the subcontract, plaintiff was to do excavation work in Kelly bayou between certain points marked section 564 and section 638, and interveners were to do the clearing and grubbing between these points. Interveners under the original contract with the levee board were to perform the entire work of excavating, clearing, and grubbing.

Nattin admits in his testimony that interveners did none of the work assumed by them under the subcontract with plaintiff, and only a part of the work as to the remainder of the contract, held by interveners. The total yardage embraced in the original contract was 459,502 cubic yards. Deficiencies amounted to 155,225 cubic yards, leaving the work accomplished at 304,277 cubic yards; 122,482 cubic yards of this deficiency lying between stations covered by plaintiff's part of the contract, and 32,742 cubic yards being between stations embraced in the part of the work retained by interveners. The plaintiff abandoned the work, and the interveners, on September 12, 1918, made application under Act 208 of 1918 to the levee board for a modification of the contract, so as to declare the work already done a compliance in full with the contract, after ten days' public notice of such application had been given as required by law. The levee board complied with the request of the interveners, and instructed the secretary of the board to draw a warrant in favor of Dutton and Nattin, interveners, for balance due them on account of improving drainage in Kelly bayou, section 2, as per certificate No. 15 from board of state engineers, dated August 14, 1918, and the contract and bond were declared canceled. This resolution recites that Dutton and Nattin, contractors, and Blodgett Construction Company, subcontractors, were present; thereby showing that the contract was canceled in its entirety by the mutual consent of all parties concerned.

The claim of damages by the interveners for the failure of the Blodgett Construction Company to fulfill its part of this contract is frivolous under these circumstances, when interveners themselves had defaulted, not only in the performance of their obligation to clear and grub that portion of Kelly bayou included in the subcontract with the Blodgett Construction Company, but interveners had also defaulted in the compliance with that part of the original contract reserved by them for performance.

[9] It is elemental that one seeking damages for the violation of a contract must allege and prove that he carried out all of the obligations resting on him before he can recover. Moss v. Howard, Prestons & Barrett, 23 La. Ann. 465; Shreveport Cotton Oil Co. v. Friedlander, 112 La. 1059, 36 South. 853; Sitman & Burton v. Lindsey, 123 La. 53, 48 South. 646; Silverman v. Caddo Gas & Oil Co., 127 La. 928, 54 South. 289.

Act 208 of 1918 is an act empowering any public body created by the laws or the Constitution of the state of Louisiana to modify or amend by mutual consent any contract or agreement awarded by it to any individual, firm, or corporation six months prior to the declaration of war by the United States

against Germany. The act is a war measure, and was necessitated by the increased prices of material and labor, and the difficulty and delay in receiving shipments by freight. The act is based upon highly equitable considerations, and its object was to relieve from bankruptcy contractors who were rendered powerless by war conditions to perform their obligations contracted in times of peace and under normal conditions.

Item (11) is a credit given Blodgett Construction Company for clearing, and was properly allowed, as this obligation rested upon interveners under the subcontract.

[10] Item (12), interest at 6 per cent. on amount claimed by interveners, was properly rejected, as there is no proof in the record of any written agreement to pay this rate of interest.

Item (1) under contract of October 6, 1916, for $250 was properly reduced to $125 by the trial judge, as Nattin, in a letter to plaintiff company, had renounced all claim to his half of this amount.

Item (2) under contract of October 6, 1916, for $150 was properly allowed. These amounts are fixed by this contract, and their payment is expressly stipulated therein.

The claim of $286.50, alleged to be due in petition of interveners for clearing, is not proven. Neither is there any proof to sustain the claim of $558.40 set forth in the petition of interveners as amount due for material and supplies.

No member of plaintiff company testified in the case. No witness was placed on the stand in behalf of plaintiff. Only documentary proof was adduced in support of plaintiff's demand. Both of the interveners, Dutton and Nattin, testified in proof of the account filed by them, each attesting its correctness.

[11] The evidence in this case as to the claims for $250, $150, and $39.28 was clearly not admissible under the petition in intervention, and, if the pleadings were not enlarged by the petition and annexed contracts, then such evidence, not having been objected to on the ground of enlargement of pleadings, had that effect. School Board v. Alexander, 125 La. 808, 51 South. 906; Houston River Canal Co. v. Reid, 127 La. 630, 53 South. 887.

Under our view of the case, interveners are entitled to recover item (1), $250, less Nattin's half interest, or $125; item (2), $150, amount allowed to cover discounts; item (8), $39.28, deducted in error from Dutton and Nattin's portion of estimate 10 (Henderson charge); item (9), $648.60, Dutton and Nattin's 20 per cent. holdback on actual yardage dug, less a credit of $37.50, due plaintiff company for clearing, leaving a balance due interveners of $915.38.

We note that the total of the judgment of the lower court in favor of interveners ($922.-50), and of the judgment in favor of plaintiff ($2,102.72), amounts to $3,025.22, while the fund in controversy is $3,024.22.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended, by reducing the judgment in favor of interveners from $922.50 to $915.38, and by increasing the judgment in favor of plaintiff from $2,102.72 to $2,108.84, and that said judgment as amended be affirmed, the costs of the appeal to be paid equally by plaintiff and interveners.

### On Application for Rehearing.

PER CURIAM. A reconsideration of this case has confirmed us in the correctness of the conclusions of law which we expressed in our original opinion herein, but a re-examination of the facts has satisfied us that we were in error in deducting $125 from item No. 1 listed on the statement of plaintiff's alleged indebtedness to the interveners. This error was also made by the district court.

The reduction was ordered on the basis of a supposed letter written by Nattin to plaintiff, in which he had renounced all claim to his one-half of this item. However, it does not appear from the record that any such letter was testified to, or offered, or filed in evidence. There is some testimony concerning the writing of a letter by Nattin in reference to the second item of $150, listed on the statement, but neither is this letter filed in the record, although the right to so file it was reserved. Doubtless, the testimony concerning this letter, with the reservation to file same in evidence, led the lower court and this court into the error touching the item No. (1) as pointed out herein. The item should have been allowed in full.

We also find that there is a mistake in our former decree as to item No. 9 on the statement of interveners' claim. In the opinion this item, amounting to $684.80, was found to be correct. In the decree the allowance for the item is $648.60, which is a palpable error.

Interveners are therefore entitled to recover item No. (1), $250, item No. (2) $150, item No. (8) $39.28, item No. (9) $684.80, less a credit of $37.50, due plaintiff for clearing, making the amount due the interveners $1,086.58.

It is therefore ordered and adjudged that the decree hereinbefore rendered herein be amended so as to read as follows:

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended, by increasing the judgment in favor of interveners from $922.50 to $1,086.58, and by reducing the judgment in favor of plaintiffs to $1,937.64, and that said judgment as amended be affirmed, the costs of the appeal to be paid equally by plaintiff and interveners.

Rehearing refused.